United States District court
for the Southern District of Illinois

Henry Mounson
　Plaintiff.
　　vs
Roger E. Walker Jr., IDOC )
A public entity, Shelton Frey, Cheryl Couch, )   Case No. 08-760-DRH
Greg Lambert, Greg Pattison, Terry Caliper, )
Terry McCann, Katherine Clover, Eddie Jones, )
Cheryl Gueterstch, Kristin Hammerley, )
Kenneth Bartley, Wanda Evans, Jay Merchant, )
Marvin Powers, and other unknown medical nurses )
et al sued in all capacities, individual, personal, )
official capacity in this action. )

## Civil Rights Complaint

42 U.S.C § 1983
other Federal law: Complaint under civil rights of institutionalize persons Act 42 U.S.C § 1997

### Parties

1). Plaintiff: Henry Mounson, N-73406, Tamms correctional center, 8500 supermax, rd. Tamms Illinois 62988.

　　　　　Defendants are as named here after.

2). Defendant: Roger E. Walker Jr.
　　title: Director of Illinois department of corrections
　　Address, 1301 Concordia court P.O. Box 19277 Springfield Illinois 62794.

3). Defendant: Illinois Department of corrections.
　　Title: A public Entity
　　Address: 1301 Concordia court P.O. Box 19277 Springfield Illinois 62794.

4). Defendant: Robert S. Frey
   Title: At the time was warden of Tamms now A/w at Shawnee Corr. Center.
   Address: Shawnee C.C. Hwy. 146 East P.O. Box 400 Vienna Il. 62995.

5). Defendant, Terry L. McCann
   Title: was warden of Tamms now warden of Stateville C.C.
   Address: Stateville C.C. Route 53 P.O. Box 112 Joliet Illinois 60434-0112.

6). Defendant, Jay Merchant
   Title: was warden of Tamms
   Address: Tamms C.C. 8500 Supermax, rd. Tamms Illinois 62988.

7). Defendant, Kristin Dawn Hammersley
   Title: was correctional mental health professional license clinical social worker
   Address: Shawnee C.C. Hwy 146 East P.O. Box 400 Vienna Illinois 62995.

8). Defendant, Eddie Jones
   Title: was A/w programs at Tamms promoted to warden of Pontiac C.C.
   Address: Pontiac C.C. 700 W. Lincoln St. P.O. Box 99 Pontiac Illinois 61764.

9). Defendant, Greg Pattison
   Title: was A/w programs at Tamms Correctional center.
   Address: Tamms C.C. 8500 Supermax Road Tamms Illinois 62988.

10). Defendant, Marvin Fisher Powers
    Title: correctional medical director and only Medical doctor at Tamms C.C.
    Address: Tamms C.C. 8500 Supermax road Tamms Illinois 62988.

11). Defendant, Terry E. Caliper
    Title: correctional health care unit administrator, register nurse and acting supervisor over mental health staff
    Address: Tamms correctional center 8500 Supermax, rd. Tamms Illinois 62988.

12). Defendant, <u>Cheryl K. Couch</u>
   Title: correctional mental health professional license clinical social worker
   Address: Tamms Correctional Center 8500 Supermax, rd. Tamms Illinois 62988.

13). Defendant, <u>Kenneth G. Bartley</u>
   Titel: correctional Warden of Tamms correctional center
   Address: Tamms correctional center 8500 supermax road Tamms Illinois 62988.

14). Defendant, <u>Gregory Lambert</u>
   Title: correctional A/W programs at Tamms correctional center
   Address: Tamms correctional center 8500 Supermax road Tamms Illinois 62988.

15). Defendant, <u>Katherine Jane Clover</u>
   Title: correctional mental health professional license clinical social worker
   Address: Tamms correctional center 8500 Supermax road Tamms Illinois 62988.

16). Defendant, <u>Cheryl Guetersloh</u>
   Title: correctional mental health activity therapist
   Address: Tamms correctional center 8500 Supermax road Tamms Illinois 62988.

17). Defendant, <u>Wanda R. Evans</u>
   Title: correctional mental health social worker
   Address: Tamms correctional center 8500 supermax road Tamms Illinois 62988.

18). Defendants: <u>unknown nursing staffs</u>
   Title: correctional register nurses and license practical nurses
   Address: Tamms correctional center 8500 Supermax road Tamms Illinois 62988.

## Litigation History

I have filed <u>5</u> Federal lawsuits since my incarceration I have not brought any other lawsuit in Federal, state courts dealing with this complaint

### Names of other lawsuits

1). Case name: <u>Mounson vs. Hinsley, et al.</u>   Case No: <u>00-209-G.P.M.</u>
   Court: <u>U.S.D.C. Southern District</u>   Date filed: <u>early 2000</u>
   Claims raised: <u>Excessive Force/medical treatment.</u>
   Result: <u>Decided in favor of Plaintiff after a (3) day jury trial.</u>

2). Case name: <u>Mounson vs. Stanback and Miles</u>   Case No: <u>97C6205</u>
   Court: <u>U.S.D.C. Northern District</u>   Date filed: <u>9/2/97</u>
   Claims raised: <u>Civil rights / Excessive force</u>
   Result: <u>Settled out of court with I.D.O.C.</u>

3). Case name: <u>Mounson vs. Barkner and Lohman</u>   Case No: <u>91CV913</u>
   Court: <u>U.S.D.C. Southern District</u>   Date filed: <u> </u>
   Claims raised: <u>Civil rights / Excessive force</u>
   Result: <u>Settled out of court with I.D.O.C.</u>

4). Case name: <u>Mounson vs. Harvey et al.</u>   Case No: <u>94 CV 1229</u>
   Court: <u>U.S.D.C. Central District</u>   Date filed: <u>July 11, 94</u>
   Claims Raised: <u>Civil rights / Excessive force</u>
   Result: <u>Dismissed on unopposed summary judgment motion by defendants, (I had no counsel to legally assist me.)</u>

## Grievance procedures

I have exhausted all available institutional and administrative remedies regarding this complaint. (see administrative review board finalized summary dated)

Count one: <ins>Deliberate indifference toward serious medical need</ins>
(Note: defendant Caliper is in a position to identify every nurse that was assigned to my housing units from 2005 to present on all 3 shifts).

1). Plaintiff contends that I started experiencing a sore throat with sometimes losing my voice for up to a month and a half before it was audible to speak and I complained 3 to 4 times a week to all the nurses assigned to my unit on all 3 shifts. I even submitted sick call requests about my sore throat and hoarse voice and sometimes it was completely gone out. Yet these sick call requests at most were ignored and denied without given any reasoning for the denial and the few times I was seen about my sore throat I was given **cold tablets** which did nothing. This has been an on going process of intentionally denial of medical care from 2005 up to March 2008. I was ■■■■ beginning to throw up my food from time to time from 2005 to March 2008. I was finally allowed to be seen by a substitute Dr. David? on 5/2/08, in which he had prescribed Plaintiff antibiotic for my throat. After two weeks and my constant complaining, I was seen again by Dr. David? who ordered plaintiff to be scheduled for a medical writ to see a throat specialist named Dr. David Mann. Dr. Mann ordered chest-scan to be performed at Union hospital in Union County Illinois. A week or so after the throat and chest scanning, I was scheduled again for another medical writ to have an Biopsy at Herrin hospital to see what was wrong with my vocal cords.

During this time period of 2005 to 2008, plaintiff has written to defendants <ins>McCann, Merchant, Frey, Lambert, Jones, pattison, Bartley</ins> as they were

(1)

wardens and assistant wardens at Tamms correctional center and complained about being denied medical care intentionally by defendant Caliper and Powers whom gave orders to their subordinates (unknown nurses) on all 3 shifts not to provide me with any treatment for my throat and throwing up my food repeatedly. Even when Plaintiff was allowed to see the nurse about my sore throat these nurses did not accurately note Plaintiff complaints as accurately as described about sore throat and vomiting up my food repeatedly. (Plaintiff do not know the names of all these nurses and defendants Caliper is in the best position to identify every nurse that was assigned to my housing units from 2005 to May 2008) That in June 2008 defendant Caliper visit Plaintiff and confirmed that the specialist plaintiff saw stated Plaintiff was diagnosed with (throat cancer) again on June 30, 2008, defendants Caliper and Powers visit Plaintiff and had brought me out to the E-pod multipurpose room and told Plaintiff that in my condition with the (throat cancer) I have a 90 to 95% good chance of recovery if I take radiation treatment. That I would be scheduled for 37 radiation treatments which started 7/15/08 to 9/11/08. Defendants Caliper and Powers and mental health staff prevented Plaintiff from taking all 37 radiation treatments by harassment and allowing me to be harassed by security staff and falsified medical reports stating Plaintiff refused 10 radiation treatments out of 37. In the event when defendants Caliper and Powers visited Plaintiff on 6/30/08, Plaintiff asked both defendants why were they denying my sickcall when I first started complaining about my throat problem in 2005? And they both looked at Plaintiff with blank faces p responses stating nothing besides we're sorry Mr. Mounson. In describing the actions and inactions of all named defendants and subordinate Plaintiff was intentionally denied and recklessly disregarded by these culpable omissions by defendants Bartley, Lambert, McCann, Merchant, Pattison, Janes, Frey, Powers, Caliper and unknown nurses violated Plaintiff 8th and 14th amendments of the cruel unusual punishment clause, intentional deliberate indifference to health and safety, intentional deliberate indifference towards a serious medical need by denying Plaintiff medical care for 3 years plus

before allowing him to be diagnosed with (throat cancer). 1).

Count two: Section 504 of the rehab act §794 USCA

2). Plaintiff contends that he is being (singled-out) discriminated against by not allowing him to participate in group activity therapy sessions, ~~individual~~ individual activity therapy sessions, group therapy sessions, individual therapy sessions at Tamms correctional center due to his mental illness. The I.D.O.C. is in violation of 504 of the rehab Act by not providing Plaintiff adequate mental health care and treatment and participation in programs and therapy and in fact discriminating against him by treating him wrong to cause his mental illness to exacerbate. Plaintiff is a "qualified individual with disability" under the Act. Defendant Caliper is acting supervisor over mental health staff and is in cohorts with defendants Hammersley, Clover, Evans, Couch, Guetersloh not to provide Plaintiff participation because of his disability - mental illness. In acting in the manner described above, the defendants Walker Jr., Couch, Evans, Guetersloh, Clover, Hammersley, Caliper and I.D.O.C. a public entity has violated Plaintiff 8th and 14th amendments pursuant to section 504 of the rehab Act §794 usca.

In describing the actions of all defendants: Walker Jr., Frey, Pattison, Jones, McCann, Lambert, Merhant, Bartley, Powers, Caliper, Couch, Clover, Hammersley, Guetersloh, Evans, other unknown nursing staff's and I.D.O.C. a public entity, all knew of an participated in such unusal and creul conditions of the Plaintiff and intentions were to cause him harm violated Plaintiff's 8th and 14th amendments protected by the Federal constitution of America.

In exposing the Plaintiff to the conditions at Tamms correctional center, defendants have unnecessarily and wantonly inflicted pain on Plaintiff.

Count one

3). Plaintiff realleges paragraphs 1-2 as if fully set forth herein. In demonstrating and subjecting Plaintiff to the unconstitutional conditions described above. The individual defendant and collectively as a whole has violated the

2.

rights of Plaintiff to be free of cruel and unusual punishment protected by the 8th and 14th amendments of the Federal united states constitution of America.

Count two:

Plaintiff realleges paragraphs 1-2 as if fully set forth herein. Tamms is operated under the control of the department, which is a public entity as that term is defined in 42 USC § 12131. The department and it's employees (Mental health professionals) has discriminated against Plaintiff on account of his disability. In acting in the manner described above, the department has unlawfully discriminated against Plaintiff in violation of the rehab Act.

Wherefore, Plaintiff requests this court to grant the following reliefs:

A). Declare that the actions and inactions of defendants described herein have violated and continue to violate the Plaintiff protected Federal rights under the 8th and 14th amendments to the United States constitution.

B). Enjoin defendants from engaging in any action or conduct, or from failing to act in any way that violates the Plaintiffs above-mentioned rights.

C). Award Plaintiff a judgment against defendants seperately and jointly for nominal damages in an amount deemed proper by the fact finder.

D). Award Plaintiff a judgment against defendants seperately and jointly for punitive damages in amount deemed proper by the fact finder.

E). Award Plaintiff a judgment against defendants seperately and jointly for compensatory damages in an amount deemed proper by the fact finder.

F). Award Plaintiff a judgment against defendants seperately and jointly for attorney fees and costs.

g). Award Plaintiff a judgment against defendants seperately and jointly for any other relief that the court deems just and proper.

Mr. Henry Mounson request a trial by jury.

Jury trial demand Yes ☒ No ☐

3

Executed on: 10/10/08
sign subscribed and sworn to by
certification provisions of 735 ILCS
5/1-109 (westlaw 2008)

Respectfully Submitted
Henry Mounson
Mr. Henry Mounson, N-73406
Tamms Correctional center
8500 Supermax road
Tamms Illinois 62988.

I, declare under penalty of
perjury that the foregoing facts
are both: 100.99% true and
correct, 28 U.S.C. 1746 and 18 U.S.C. 1621.

ILLINOIS DEPARTMENT OF CORRECTIONS

## Mental Health Diagnostic and Treatment Note

Exhibit Evaluation

Offender Name: Mounson, Henry  8/5/08       ID#: N73406

**Juvenile Facilities Only:**

Housing Unit: _____       Correctional Counselor: _____

Psychiatrist: _____       Psych Medication: _____

Mental Health Level: _____       Recommended Mental Health Level: _____

Reason for Referral:

☐ Initial Evaluation   ☐ Medication Review   ☐ Mental Health Level Change   ☐ Crisis Response

☐ Group Note   ☐ 1:1 Note   ☐ Parole Clearance   ☐ Family Therapy   ☒ Other Competency Eval

Subjective Data: Mr. Mounson reported that he wanted help to get out of Tamms. He reported that he didn't like to be around people that hated him. He described various ways in which he was "tortured" over the past twenty years he has spent in IDOC. He reported that he was intentionally infected with Hepatitis C because he wouldn't conform to the rules. He also made reference to a conspiracy that judges and Illinois Administration have against him. He referred to himself as a victim and innocent. When I inquired about his current treatment and diagnosis he was able to tell me that he had cancer of the throat which he referred to as "squeamish" but he recognized that there was a 90% rate of successful recovery with treatment. He also understood that if he did not receive the treatment that the cancer could spread, and he could die. He also understood that he could potentially have to have surgery to remove the cancer if he did not comply with the treatment. He reported that he did want treatment but not under the circumstances. The circumstances he was referring to seem to involve a Lieutenant that he reported that he had argued with but that now takes him to his treatments daily. He also reported on one occasion he refused to go because he wasn't allowed; soap and therefore, was malodorous and did not want to go to radiation while he was malodorous. He stated that might cause the person giving the radiation to give him too much. At various times throughout the interview he referenced death as a solution to his problems. But he also stated that he does not want to give up but wanted to transfer to another institution to start over with a new leaf. He reported various religious experiences and beliefs. For example he stated that people around Tamms are devil worshipers. He reported that in 2004 he actually saw two female staff members on separate occasions transform their faces into "heinous creatures." He also referred to various staff as witches. He described an event in the past where God revealed to him that there was a guy present at his court hearings who was trying to kill him. He reported that he believed this because of the way the man looked at him and that he seemed to enter and leave the court room when Mr. Mounson did. He stated that most everyone hated him but he also acknowledged that when people were kind to him that he suspected their motivations and believed they had ulterior motives. He ultimately acknowledged that this put people in a difficult position because there was no behavior that they could engage in that he would not be suspicious of. He acknowledged that he did have a tendency to view people in a suspicious way.

Objective Data: Most of Mr. Mounson's history was obtained from review of extensive records. His past psychiatric history includes a litany of diagnoses and medications. Amoung these diagnoses are Schizoaffective Disorder, Bipolar Disorder, Major Depressive Disorder, Intermittent Explosive Disorder, Somatoform disorder, Paranoid Personality disorder, Adjustment Disorder with mixed disturbance of emotions and conduct, Antisocial Personality Disorder, Schizotypal Personality Disorder, Borderline Personality Disorder and no diagnoses. Among previous

| Mental Health Evaluation | Mounson, Henry | N73406 | 8/5/08 | Page 2 | Exhibit Evaluation |

medications he has received are included Prolixin, Sinequan, Mellaril, Desyrel, Trazadone, Elavil, Prozac, Navane, Loxitane, Tegretol and Haldol. It seems that at least on two occasions the medications were enforced and this was subsequent to aggressive acting out behavior. His aggression seems to be illicited by being rejected by female staff members to whom he professed his love. They also seem to be illicted by his feelings of persecution or refusals of various types. His history includes many of the symptoms he reported today especially involving the religious preoccupation and somewhat odd spiritual beliefs involving a connection with God and perception of demons. He has also previously reported feelings that his food and medications were being tampered with and that there were conspiracies against him. He has consistently been suspicious of the motivations of others. He has consistently reported inadequate treatment of his physical, mental health and legal needs. He has consistently regarded those around him as hating him or otherwise being against him in some way. He has also consistently engaged in inappropriate sexual behaviors including mastrubating or exposing himself in front of female staff. He has also sent inappropriate sexual letters and made inappropriate sexual comments to mainly female staff. There do seem to be episodes wherein the religious aspects of his beliefs and paranoid features become more prominent, and he appears psychotic. However he has episodes that last years wherein these characteristics although present are not necessarily prominent or excessive. However, his tendency to view others as persecutory is a consistent phenomenon. Regarding his past medical history, he has Hepatitis C and is currently being treated for squamous cell carcinoma of the true vocal cords. He was advised by his onocologist to undergo at least 35 radiation treatments. He's also had a history of peptic ulcer disease. He has NKDA. He is currently taking prn pain medication as well as a gargle prescribed by the onocologist. Regarding his substance abuse history, most consistently he has reported abuse of marijuana for approximately 13 years. He has been incarcerated in IDOC since 1987. He has been transferred back and forth from various prisons throughout this time including Pontiac, Stateville, Menard, and Dixon. He has reported no family history of mental illness. Records indicate that he was born in Mississippi that his parents divorced at some point. There are various reports regarding the number of brothers and sisters he has but he seems to have a number of them. One report indicates that he has 5 living sisters, two having died and 4 brothers. He was expelled from high school in the 11th grade apparently for inappropriate sexual behavior. He did not have much of an employment history. He was in special education classes. There was some issue as to his intellectual functioning. There is no official scored testing however the Tamms psycholgoist did perform a Gamma to assess his intellectual functioning; and although she did not submit a formal report, she did indicate on the raw data that his score was 91 indicating an average level of intelligence which is also consistent with my evaluation and review of written material he has submitted. Another significant symptom he has manifested throughout the years is self-injurious behavior. None of this has been particularly severe. He usually makes cuts that will induce bleeding and then picks at the scabs at later episodes. He has been on mulitple crisis watches. Records indicate that frequently he calls a crisis only to discuss various issues such as his legal situation or property issues. Sometimes it is just to lure a nurse or other female staff to his cell door. Mental status exam: I saw Mr. Mounson immediately upon his return from a radiation treatment. He was in a spit shield. He was calm and cooperative with the evaluation and maintained good eye contact. His speech was normal in rate and volume. He described his mood as depressed. His affect at times was sad, at times was neutral and other times was agitated. Based on the content of the conversation. His thoughts at times were circumstantial but were logical for the most part. He did not experience hallucinations during the interview. He did express a number of beliefs including that his food was being poisoned, that there was a conspiracy against him and that he was being tortured and persecuted by staff at Tamms. Although he made frequent references to preferring to be dead, he stated a number of times that he wouldn't actively attempt suicide. He also said on a number of occasions that he wanted to live and not give up. He provided his own abstraction that was "the apple doesn't fall far from the tree" and was able to use it in an appropriate context. I did not specifically test his other cognitive skills. His insight and judgment appeared impaired. After reviewing Mr. Mounson's record and evaluating him personally, I had an understanding of the difficuly in reaching a diagnosis. He manifests a number of signs and symptoms that are not completely typical of one disorder. Although he does have prominent feelings of persecution, in specific instances he can be reasoned with and change his mind, but his pervasive pattern, present for years, is to view others with suspicion. To me this appears to be more consistent with a Paranoid Personality Disorder than Schizophrenia. He also maintains a rather eccentric religious belief that isn't entirely consistent with delusional thinking in that he references an ability to communicate with God but describes it more as a sensation. When he describes the faces of staff turning into demons, however, this does seem to be more of a psychotic type of regression. It seems that he is prone to more psychotic type regressions under stressors of various sorts which would be consistent with a Borderline Personality Disorder. He also shows multiple features of an Antisocial Personality Disorder. He also does have an affective component to his

illness which seems pervasive as well. He seems to have a chronic type of depressed mood consistent with his feelings of being persecuted and disliked by others. However, he does not meet the full criteria for a Major Depressive Disorder. His episodes with aggression under stress are consistent with an Antisocial as well as Borderline or even Paranoid Personality Disorder. It is unclear how these symptoms responded when he was treated with anti-psychotic medication. Mr. Mounson himself reports that he did not feel any less suspicious of others on these medications but only felt slowed down. In fact he was given these medications when he was aggressive and review of records does not clarify whether his response was positive due to diminished aggressive episodes or diminished feelings of persecution. It seems to be that his symptoms have been pervasive, long standing and worsen with certain stressors. This is opposed to discreet episodes of mood or psychotic symptoms that last for week or two at a time and are clearly responsive to medication and starting in adulthood. For this reason I believe that Mr. Mounson suffers from a complicated Axis II pathology rather than Axis I pathology.

Assessment/Diagnosis:

AXIS I: Exhibitionism

   Sexual Sadism

AXIS II: Paranoid Personality Disorder, this is due to a pervasive distrust and suspiciousness of others such that their motives are intepreted as malovelent which began in early adulthood or prior and is present in a variety of context and include: 1: suspicion without sufficient basis that others are exploiting, harming or decieving him, 2: preoccupation with trustworthiness of those around him,, 3: reluctance to confide in others because of unwarranted fears that the information will be used maliciously against him. 4: reads hidden meaning or threatening meanings into benign remarks or events, 5: persistently holds grudges, 6: perceives attacks on his character or reputation that aren't apparent to others and is quick to react angrily or counterattack. These symptoms are taken virtually verbatium from DSMV TR.

He also meets the critiera for Antisocial Personality Disorder in that he has demonstrated pervasive pattern of disregard for and violation of the rights of others indicated by: 1: failure to conform to social norms with respect to lawful behaviors, 2: deceitfulness, indicated by lying, use of conning others for personal profit or pleasure, 3: impulsivity, failure to plan ahead, 4: irritability and aggressiveness indicated by repeated physical fights or assaults, 5: reckless disregard for the safety of self and others,6: lack of remorse as indicated by being indifferent to or rationalizing, having hurt or mistreated others.

Borderline Pesonality Disorder: as shown by a pervasive pattern of instability with interpersonal relationships, self-image and affects and marked impulsivity which is present in a variety of contexts indicated by: 1: frantic efforts to avoid real or imagined abandonment, 2: patterns of unstable interpersonal relationships characterized by extremes of idealization and devaluation, recurrent suicidal behavior and gestures or threats or self-mutilating behavior, 4: affective instability due to marked reactivity of mood lasting rarely more than a few days and showing intense epiosodic dysphoria, irritability or anxiety, 5: inappropriate and intense anger or difficulty controlling anger, 6: transient stress related increased in his paranoid ideation. His episodes of religious preoccupation becoming more prominent and experiences of illusions and possibly hallucinations might also fit into this category but may also be consistent with schizotypal personality features such as odd beliefs and magical thinking.

AXIS III: Squamous cell carcinoma of the true vocal cord and Hepatitis C

Summary and Treatment Plan: Regarding his competency to make medical decision, it should be noted that his current behavior is not atypical of his behavior for the past twenty years. In other words, he frequently requests and demands medical attention and when he receives it often refuses treatment. I believe that this is a characteristic consistent with his character pathology as delineated above. He has a complete understanding of his medical situation and explained it to me including his prognosis. He is well aware that his life could be at stake without compliance with the treatment. He is unable to give a consistent reason for the times he has refused radiation treatment, and I believe that this is because there have been different reasons motived by various aspects of his character pathology. I believe that it is mainly motivated by his perception of others as uncaring and unfeeling toward him which is represented by being denied requests such as a transfer or even soap. When this occurs immediately prior to his radiation treatment, his immediate priorty becomes exploiting his perceived victim role and refusing to cooperate with procedures necessary for him to obtain his treatment. He has never stated that he does not want treatment; he only states that he

does not like the circumstances under which he is to receive it. When he does go for treatment and engage with the physicians outside of the facility treating him, he behaves appropriately and is cooperative. Other physicians have received informed consent from him. Dr. Powers, his primary care physician at Tamms, has never felt that Mr. Mounson did not understand or was not capable of making his own medical decisions, and he has demonstrated that he has an awareness of his medical situation. What prevents him from consistently engaging in treatment is a result of his character pathology rather than a serious mental illness and is basically a volitional choice he makes. He does have reasons each time for making the decisions he does. Therefore, I do believe that he is competent to make his own medical decisions. However, I also believe that it would be helpful for him to be more compliant with is treatment if he felt cared for. Unfortunately given his suspicious nature it is difficult to convince him that one does care about his health. He was willing to work with me given that I do not yet have a history of working with him. Also I am a female. However, the combination of my willingness to engage in treatment with him as well as initiating an anti-psychotic medication to try to temper his paranoid tendencies may help him cope with his immediate situation a little better and at least for some time appropriately engage in treatment. However, just as has happened with virtually every previous clinician he has worked with, it is likely that he will be suspicious of me at some point or behave in an inappropriate ways with me including tryng to establish a romantic or sexual connection. I informed him of my concerns but also indicated that I was willing to try if he would. We reviewed some potential medications including Risperidone and Haloperidol. We reviewed the potential risks and benefits of each. Ultimately he agreed to a trial of Risperidone. I will start a low dose and titrate it up as tolerated. I will then f/u with him every three weeks. I emphasized with him that part of his working with me was behaving appropriately at medication administration times with the nurses. If it is possible I would also try to postpone his ability to review his medical records until after the treatments are complete given his tendency to misconstrue statements documented or the intention of the clinician. This might interfere again with his compliance with life sustaining treatments. I will initiate the Risperidone and f/u with him regularly.

1. Discussed side effects to current psychotropic medication.
2. Any emergency arising out of these were clarified and the procedure to get help outlined.
3. Inmate's problem and diagnosis discussed with staff.
4. Follow up appointment is as above:
5. Inmate expresses no known allergies to psychotropic medication.
6. Inmate's current psychotropic medication includes:

a. Risperidone 2 mg q hs

_____, M.D.   8/11/08
Signature/Title          (Date)
Dr. Claudia Kachigian
Psychiatrist

Supervisor Signature (If applicable)        Date

State of Illinois )ss
County of Alexander)

## Affidavit

I, Henry Mounson, deposes and says that as to the petition herein. He is the Plaintiff in the above entitled cause; that he has read this foregoing document, by his signed, and the statements contained therein are true in substance and in fact.

*Henry Mounson*
Plaintiff Pro se

I, declare under penalty of perjury     N-73406.
that the foregoing facts are true and     I.D. Number
correct to the best of my personal knowledge.
28 U.S.C. 1746 and 18 U.S.C. 1621.